UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMAL CURTIS (a/k/a "Robbie"),<br>Defendant. | Docket No. 2:25-cr-23 |

PLEA AGREEMENT

The United States of America, by and through the United States Attorney for the District of Vermont (hereafter "the United States"), and the defendant, JAMAL CURTIS, agree to the following in regard to the disposition of pending criminal charges.

1. JAMAL CURTIS agrees to plead guilty to Counts Three and Five of the Indictment charging him with distribution of cocaine base and fentanyl and possession of cocaine base with intent to distribute, respectively, both in violation of 21 U.S.C. § 841(a).

2. JAMAL CURTIS understands, agrees and has had explained to him by counsel that the Court may impose the following sentence on his plea: up to 20 years of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(C); up to lifetime supervised release with a mandatory minimum of 3 years, pursuant to 21 U.S.C. § 841(b)(1)(C); up to a $1,000,000.00 fine, pursuant to 21 U.S.C. § 841(b)(1)(C); and a $200.00 special assessment pursuant to 18 U.S.C. § 3013.

3. JAMAL CURTIS agrees to plead guilty because he is, in fact, guilty of the above crime.

4. JAMAL CURTIS stipulates to, agrees with, and admits the following facts:

   a. Between approximately October 2024 and February 24, 2025, JAMAL CURTIS distributed controlled substances, including fentanyl, cocaine, and cocaine base to various drug consumers within the District of Vermont.

b. On January 14, 2025, JAMAL CURTIS distributed 0.6 grams, including packaging, of fentanyl and 1.3 grams, including packaging, of cocaine base to a law enforcement Confidential Informant ("CI") in exchange for $70.00 in U.S. currency at 95 Grant Street, Apartment 1, Burlington, Vermont.

c. On January 15, 2025, JAMAL CURTIS distributed 0.5 grams, including packaging, of fentanyl and 1.4 grams, including packaging, of cocaine base to a law enforcement Confidential Informant ("CI") in exchange for $200.00 in U.S. currency at 42 North Winooski Street, Apartment 4, Burlington, Vermont.

d. On January 17, 2025, JAMAL CURTIS distributed 1.1 grams, including packaging, of fentanyl and 0.4 grams, including packaging, of cocaine base to a law enforcement Confidential Informant ("CI") in exchange for $100.00 in U.S. currency at 42 North Winooski Street, Apartment 4, Burlington, Vermont.

e. On January 17, 2025, JAMAL CURTIS distributed 0.4 grams, including packaging, of fentanyl and 0.2 grams, including packaging, of cocaine base to a law enforcement Confidential Informant ("CI") in exchange for $100.00 in U.S. currency at 42 North Winooski Street, Apartment 4, Burlington, Vermont. On this date the CI handed the U.S. currency to an associate of JAMAL CURTIS immediately prior to JAMAL CURTIS handing the CI the controlled substances.

f. On February 24, 2025, JAMAL CURTIS was arrested by agents of Homeland Security Investigations ("HSI"). At the time of his arrest JAMAL CURTIS was searched and agents located 16.6 grams, including packaging, of cocaine base packaged in 11 individual plastic baggies. Curtis intended to distribute the 16.6 grams of cocaine base to drug customers.

g. At all times between October 2024 and February 24, 2025, fentanyl and cocaine base were Schedule II controlled substances.

5. JAMAL CURTIS understands that it is a condition of this agreement that he refrain from committing any further crimes, whether federal, state or local, and that if on release he will abide by all conditions of release.

6. JAMAL CURTIS acknowledges that he understands the nature of the charges to which he will plead guilty and the possible penalties. He also acknowledges that he has the following rights: the right to persist in a plea of not guilty; the right to a jury trial; the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding; the right at trial to confront and cross-examine adverse witnesses; the right to be protected from compelled self-incrimination; and the right to testify and present evidence and to compel the attendance of witnesses. He understands that by pleading guilty, he will waive these rights. He also understands that if his guilty plea is accepted by the Court, there will be no trial and the question of guilt will be resolved; all that will remain will be the Court's imposition of sentence.

7. JAMAL CURTIS fully understands that he may not withdraw his plea because the Court declines to follow any recommendation, motion or stipulation of the parties to this agreement, other than an agreement between the parties pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States specifically reserves the right to allocute at sentencing. There shall be no limit on the information the United States may present to the Court and the Probation Office relevant to sentencing and no limit (except as otherwise provided in this agreement) on the positions the government may take at sentencing. Both parties are free to move for a departure under the Guidelines and to argue for a sentence outside the advisory sentencing range,

except as otherwise set forth in this agreement. The United States also reserves the right to correct any misstatement of fact made during the sentencing process, to oppose any motion to withdraw a plea of guilty, and to support on appeal any decisions of the sentencing Court whether in agreement or in conflict with recommendations and stipulations of the parties.

8. JAMAL CURTIS fully understands that any estimates or predictions relative to the Guidelines calculations are not binding upon the Court. JAMAL CURTIS acknowledges that there is no agreement between the parties as to both the calculation of the offense level and the defendant's criminal history category. JAMAL CURTIS understands his criminal history could impact both the offense level and the criminal history category applicable to his Guideline calculation. He fully understands that the Guidelines are advisory and that the Court can consider any and all information that it deems relevant to the sentencing determination. He acknowledges that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief.

9. JAMAL CURTIS agrees to make a good-faith effort to pay any fine or restitution he is ordered to pay. JAMAL CURTIS agrees to pay the special assessment at the time of sentencing.

10. JAMAL CURTIS is aware that his guilty plea may result in the loss of certain government benefits, including housing subsidies, food stamps, and some Social Security benefits, pursuant to 21 U.S.C. § 862 and § 862a.

11. JAMAL CURTIS recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. The defendant, if not a United States citizen, may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Removal and other immigration consequences are the subject

of a separate proceeding, however, and he understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. JAMAL CURTIS nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

12. The United States agrees that in the event that JAMAL CURTIS fully and completely abides by all conditions of this agreement, the United States will:

a. move to dismiss the remaining Counts of the Indictment at the time of sentencing;

b. not file additional federal charges in the District of Vermont based on the conduct described in the factual stipulations at paragraph 4 and for violations of 21 U.S.C. §§ 841(a) and 846 between October 1, 2024, and February 24, 2025, committed by him in the District of Vermont;

c. recommend that he receive a two-point credit for acceptance of responsibility under Guideline § 3E1.1(a), provided that (1) he cooperates truthfully and completely with the Probation Office during the presentence investigation, including truthfully admitting the conduct comprising the offense(s) of conviction and not falsely denying any relevant conduct for which he is accountable under U.S.S.G. § 1B1.3, (2) he abides by the conditions of his release, and (3) provided that no new information comes to the attention of the United States relative to the issue of his receiving credit for acceptance of responsibility; and

d. move for an additional one-point credit for timely acceptance of responsibility, if the offense level (before acceptance) is 16 or greater and he meets the conditions in the subparagraph above.

13. If the United States determines, in its sole discretion, that JAMAL CURTIS has committed any offense after the date of this agreement, has violated any condition of release, or has provided any intentionally false information to Probation, the obligations of the United States in this agreement will be void. The United States will have the right to recommend that the Court impose any sentence authorized by law and will have the right to prosecute him for any other offenses he may have committed in the District of Vermont. JAMAL CURTIS understands and agrees that, under such circumstances, he will have no right to withdraw his previously entered plea of guilty.

14. It is understood and agreed by the parties that should JAMAL CURTIS's plea not be accepted by the Court for whatever reason, or later be withdrawn or vacated, this agreement may be voided at the option of the United States and he may be prosecuted for any and all offenses otherwise permissible. JAMAL CURTIS also agrees that the statute of limitations for all uncharged criminal offenses known to the United States as of the date it signs this plea agreement will be tolled for the entire period of time that elapses between the signing of this agreement and the completion of the period for timely filing a petition under 28 U.S.C. § 2255, or if such petition is filed, the date of any decision by a court to vacate the plea or the conviction.

15. It is further understood that this agreement is limited to the Office of the United States Attorney for the District of Vermont and cannot bind other federal, state or local prosecuting authorities.

16. JAMAL CURTIS expressly states that he makes this agreement of his own free will, with full knowledge and understanding of the agreement and with the advice and assistance of his counsel, Richard Goldsborough, Esq. JAMAL CURTIS further states that his plea of guilty is not the result of any threats or of any promises beyond the provisions of this agreement.

Furthermore, JAMAL CURTIS expressly states that he is fully satisfied with the representation provided by his attorney, Richard Goldsborough, Esq., and has had full opportunity to consult with his attorney concerning this agreement, concerning the applicability and impact of the Sentencing Guidelines (including, but not limited to, the relevant conduct provisions of Guideline Section 1B1.3), and concerning the potential terms and conditions of supervised release.

17. No agreements have been made by the parties or their counsel other than those contained herein or in any written agreement supplementing this agreement.

UNITED STATES OF AMERICA

MICHAEL P. DRESCHER
Acting United States Attorney

Sept. 16, 2025
Date

By: [signature]
Jason Turner
Assistant U.S. Attorney

9-15-2025
Date

[signature]
JAMAL CURTIS
Defendant

I have read, fully reviewed and explained this agreement to my client, JAMAL CURTIS. I believe that he understands the agreement and is entering into the agreement voluntarily and knowingly.

9-16-25
Date

[signature]
Richard Goldsborough
Counsel for the Defendant